HUNTER, Judge.
Respondent-mother appeals from an order of the trial court terminating her rights to her minor son. Respondent argues the trial court erred in proceeding with the termination hearing without first appointing a guardian ad litem to represent her where it was alleged that respondent suffered from significant mental illness. As we agree that the trial court erred in terminating respondent's parental rights without first assessing her need for appointment of a guardian ad litem, we reverse the order terminating respondent's parental rights and remand this case to the trial court for a hearing on whether respondent is entitled to a guardian ad litem.
The State presented evidence at the termination hearing tending to show the following: The minor child at issue was born to respondent on 21 October 2002. Two days later, the Cleveland County Department of Social Services ("DSS") filed a juvenile petition alleging the infant was neglected in that "the child and the mother had tested positive for cocaine at the time of the child's birth and that the mother was a paranoid schizophrenic and heard voices and had not been taking her medication." DSS was unable to locate the infant's father, whom respondent could only identify as a Mexican man named "Amigas." Respondent told social workers she did not have a relationship with the infant's father and was unaware of his whereabouts. DSS also attempted to find an appropriate family placement for the child but was unable to do so. DSS therefore placed the infant in foster care.
On 31 October 2002, respondent visited with her son. During the visit, respondent was "agitated" and "accused . . . the social workers of putting stuff in her baby's milk to hurt him." Respondent was also observed talking to herself and twice "almost dropped the baby." In January of 2003, respondent was hospitalized in the psychiatric unit of the Kings Mountain Hospital. Following her release, she was arrested and later convicted of two counts of felonious breaking, entering, and larceny.
On 12 February 2003, the trial court held an adjudication hearing regarding the minor child. Respondent, who was incarcerated at the time of the hearing, stipulated that the child was a neglected juvenile as defined by section 7B-101(15) of the General Statutes in that he lived in an environment injurious to his welfare, based upon a finding of respondent's substance abuse. The trial court subsequently entered an order finding and concluding that respondent's child was a neglected child and placed legal and physical custody with DSS.
On 9 April 2003, respondent was hospitalized and diagnosed with "schizo affective disorder, bipolar, type M" as well as "early or full remission for alcohol, cannabis, and cocaine dependence." In July of 2003, respondent was again incarcerated and placed in the residential mental health program at the North Carolina Correctional Institution for Women. While in the residential mental health program, respondent received treatment for mental health issues and addiction. Jamie McGinnis ("McGinnis"), a clinical social worker in the residential mental health program, testified respondent experienced delusions about "various famous people - having relationships with them . . . receiving money from them." On 18 February 2004, respondent discussed with McGinnis her "concern about three point five million dollars . . . that she was going to will back to . . . Woodrow Wilson and Terry." McGinnis stated that respondent was scheduled for release from incarceration no earlier than January 2005 and no later than April 2005.
Following presentation of the evidence, the trial court found and concluded that sufficient grounds existed to terminate respondent's parental rights. Specifically, the trial court found that respondent "by her use of cocaine while pregnant with the juvenile, has neglected the juvenile." The trial court made the following pertinent findings in regards to respondent's mental health issues:
15. That the respondent mother was incarcerated in the North Carolina Department of Correction from July 2001 until January 2002 for felonious breaking, entering and larceny charges. That during her incarceration, the respondent mother received residential Mental Health services through the Department of Correction, which included treatment for substance abuse and mental illness.
. . .
27. That the Cleveland County Department of Social Services scheduled at least 10 supervised visits for the mother between the period of October 31, 2002 and March 6, 2003. The mother only exercised visitation with the juvenile on four of those occasions, including one visit where the mother left early, and another where she arrived late. The respondent mother, during visits, demonstrated a lack of knowledge of parenting, almost dropped the baby twice and talked to herself during the visit.
. . .
31. That during this same period, the respondent mother was also hospitalized in the psychiatric unit of the Kings Mountain Hospital. . . .
. . .
33. That following her arrest the respondent mother was released on bond, but subsequently arrested again and hospitalized at Broughton Hospital for at least one month pursuant to a House Bill Commitment. . . .
34. That during her current period of incarceration in the Department of Correction, the respondent mother has . . . continued to demonstrate mental instability as recently as February 2004.
. . .
40. That the respondent mother, while incarcerated . . . has received services based upon a dual diagnosis of mental illness and substance abuse addiction.
The trial court concluded that respondent had willfully abandoned the juvenile and had willfully left the juvenile in foster care without making reasonable progress in correcting the conditions that led to the child's removal. The trial court concluded it was in the best interests of the child for respondent's parental rights to be terminated and entered an order accordingly. From the order terminating her parental rights, respondent appeals.
Respondent argues the trial court erred in failing to appoint a guardian ad litem to represent her where substantial evidence was presented tending to show she was incapable of caring for her child due to mental illness and substance abuse. We agree that, under the facts of this case, the trial court erred in proceeding to a termination hearing without first assessing the need for a guardian ad litem to be appointed for respondent. We therefore reverse the order terminating respondent's parental rights and remand this case to the trial court for a hearing on whether respondent should receive a guardian ad litem.
A parent's right to retain custody of his or her child and to determine the care and supervision suitable for that child, is a "'fundamental liberty interest'" requiring due process protection. In re Montgomery, 311 N.C. 101, 106, 316 S.E.2d 246, 250 (1984) (quoting Santosky v. Kramer, 455 U.S. 745, 758-59, 71 L. Ed. 2d 599, 610 (1982)). "Accordingly, the judicial system has a distinct obligation to ensure that parental rights are protected." In re T.W., L.W., E.H., ___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (No. COA04-1204 filed 6 September 2005) (slip op. 6). "With respect to termination proceedings, our statutes provide variousprocedures, consistent with due process, to protect the various interests of the parties involved." Montgomery, 311 N.C. at 108, 316 S.E.2d at 251. Section 7B-1101 of our General Statutes is one such example. Section 7B-1101 of our General Statutes provides, in pertinent part, that:
In addition to the right to appointed counsel set forth above, a guardian ad litem shall be appointed in accordance with the provisions of G.S. 1A-1, Rule 17, to represent a parent in the following cases:
(1) Where it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6), and the incapability to provide proper care and supervision pursuant to that provision is the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or another similar cause or condition.
N.C. Gen. Stat. § 7B-1101 (2003). Where the allegations contained in a petition or motion to terminate parental rights tend to show that the respondent is incapable of properly caring for his or her child because of mental illness, the trial court is required to appoint a guardian ad litem to represent the respondent at the termination hearing. In re Estes, 157 N.C. App. 513, 518, 579 S.E.2d 496, 499, disc. review denied, 357 N.C. 459, 585 S.E.2d 390 (2003). A guardian ad litem must be appointed even when juvenile dependency is alleged, but not pursued as a ground to terminate parental rights at the termination hearing. This is because the evidence in neglect and dependency cases often reveals that a parent's "mental health issues and the child's neglect are so intertwined at times as to make separation of the two virtually, if not, impossible." In re J.D., 164 N.C. App. 176, 182, 605 S.E.2d 643, 646, disc. review denied, 358 N.C. 732, 601 S.E.2d 531 (2004); see also In re B.M., M.M., An.M., & Al.M., 168 N.C. App. 350, 358-59, 607 S.E.2d 698, 703-04 (2005) (reversing the trial court where it failed to appoint a guardian ad litem even though a ground other than dependency existed to terminate the respondent's parental rights, as the same mental health issues were pertinent to both grounds).
The appointment of a guardian ad litem for a parent who suffers from diminished capacity is essential to protect the parent's procedural due process rights. See In re D.S.C., 168 N.C. App. 168, 171, 607 S.E.2d 43, 46 (2005) (stating that "appointment of a GAL . . . is for the purpose of protecting and ensuring, at the very least, the procedural due process rights of a parent who may be later adjudicated as 'incapable'"); In re Shepard, 162 N.C. App. 215, 227, 591 S.E.2d 1, 9 (2004) (noting that the role of the guardian ad litem is as a "guardian of procedural due process for the parent, to assist in explaining and executing her rights"). In Montgomery, our Supreme Court held that the termination of parental rights of a person suffering from diminished capacity is constitutional. The respondent-mother in Montgomery "suffered from mental problems" in that she "often related to others that she believed someone was looking in the windows of her house and also that someone was trying to get inside her mind." Montgomery, 311 N.C. at 103, 316 S.E.2d at 248. Psychological evaluations indicated that the respondent-mother was also mentally retarded. The trial court terminated the respondent-mother's parental rights on the ground that she had neglected her children.
On appeal, the respondent-mother challenged, inter alia, the constitutionality of subsection (7) of N.C. Gen. Stat. § 7A-289.32 (now codified as N.C. Gen. Stat. § 7B-1111(a)(6)), which provided for termination of parental rights upon a finding that "'the parent is incapable as a result of mental retardation or mental illness of providing for the proper care and supervision of the child . . . and that there is a reasonable probability that such incapability will continue throughout the minority of the child.'" Montgomery, 311 N.C. at 114, 316 S.E.2d at 254 (quoting N.C. Gen. Stat. § 7A-289.32(7)). The respondent-mother argued that termination of her parental rights under this section denied her due process rights. The Montgomery Court disagreed, noting that the parental termination statutes provided for notice and a hearing for parents,as well as the right to present witnesses and conduct cross-examination. The Court further stated that:
A parent has a right to counsel and to appointed counsel in case of indigency, if not waived by the parent. The Act also provides for the appointment of a guardian ad litem to represent the parent who suffers a diminished mental capacity. We believe the provisions of this statute adequately assure respondent, and those similarly situated, of procedural due process protection.
Id. at 115, 316 S.E.2d at 255 (citation omitted) (emphasis added). Thus, our Supreme Court considered the appointment of a guardian ad litem a critical factor in the protection of procedural due process rights for parents who suffer diminished mental capacity.
More recently, this Court held that the trial court erred when it failed to rule on a motion to appoint a guardian ad litem during a termination proceeding for a respondent-mother diagnosed with bipolar affective disorder with possible psychotic disorder.[1] See In re T.W., ___ N.C. App. at ___, ___ S.E.2d at ___. Although the respondent-mother's parental rights were not terminated pursuant to section 7B-1111(6), the Court nevertheless held that, where the evidence tended to show, and the trial court made findings indicating that the respondent-mother's "mental instability and her incapacity to raise her minor children were central factors in the court's decision to terminate her parental rights," the failure to address the respondent-mother's request for a guardian ad litem was reversible error. In re T.W., ___ N.C. App. at ___, ___ S.E.2d at ___ (slip op. 10).
In the present case, the original juvenile petition filed by DSS alleged respondent had neglected her infant in that "the child and the mother had tested positive for cocaine at the time of the child's birth and that the mother was a paranoid schizophrenic and heard voices and had not been taking her medication." At the termination hearing, the State presented significant evidence of respondent's history of mental illness, including her hospitalization at two mental institutions and her assignment to the residential mental health program at the North Carolina Correctional Institution for Women. The evidence tended to show that respondent was diagnosed as schizophrenic, bipolar, and that she experienced delusions and talked to herself at times. During one visit with her child, respondent was "agitated," accused social workers of attempting to harm the infant, and twice almost dropped her child. In its order terminating respondent's parental rights, the trial court made several findings noting respondent's history of mental illness, including the fact that respondent had "continued to demonstrate mental instability as recently as February 2004," which was only one month prior to the termination hearing. As such, there was substantial evidence that respondent suffered from diminished mental capacity. Moreover, the trial court's findings "demonstrate the court's awareness of respondent's severe limitations in the ability to parent her child based upon her mental illness." In re T.W., ___ N.C. App. at ___, ___ S.E.2d at ___ (slip op. 9). Under these facts, we conclude that the trial court erred in terminating respondent's parental rights without first holding a hearing to determine whether the appointment of a guardian ad litem was necessary to protect respondent's procedural due process rights.
Petitioner argues that respondent is not entitled to appointment of a guardian ad litem, in that the petition to terminate her parental rights did not allege dependency as grounds for termination, but only neglect. Nor did the petition for termination allege any mental instability on the part of respondent. Petitioner is correct that section 7B-1101 only requires the trial court to appoint a guardian ad litem "where it is alleged that a parent's rights should be terminated pursuant to G.S. 7B-1111(6)." N.C. Gen. Stat. § 7B-1101(1). Protection of respondent's procedural due process rights cannot stand or fall,however, based upon DSS's discretionary decision to allege neglect, rather than dependency, in its petition for termination of parental rights. Otherwise, the determination of whether a parent is entitled to a guardian ad litem appointment is placed entirely in the hands of DSS, who is the adversarial party in a termination case. As noted supra, the right to custody of one's child is a "fundamental liberty interest" requiring due process protection. Our Supreme Court has held that the due process rights of a parent with diminished capacity are protected during a termination proceeding where the statutes provide for appointment of a guardian ad litem. See Montgomery, 311 N.C. at 115, 316 S.E.2d at 255. Thus we hold that where, as here, substantial evidence before the trial court tends to show that the respondent suffers from diminished mental capacity, the trial court must conduct a hearing to determine the respondent's need for appointment of a guardian ad litem before terminating parental rights. See id.; In re T.W., ___ N.C. App. at ___, ___ S.E.2d at ___. We therefore reverse the order of termination and remand this case to the trial court for a hearing to determine respondent's need for a guardian ad litem to protect her procedural due process rights. Our decision makes it unnecessary to address respondent's remaining assignments of error. The judgment of the trial court is
Reversed and remanded.
Judges TYSON and STEELMAN concur.
Report per Rule 30(e).

Although the opinion in In re T.W. did not recite the grounds for termination as alleged in the petition or found by the trial court, we note that the record in that case indicates that DSS never alleged dependency on the part of the respondent-mother. The trial court terminated her parental rights pursuant to section 7B-1111(a)(2), for failure to make reasonable progress in correcting the conditions leading to removal of the juvenile. N.C. Gen. Stat. § 7B-1111(a)(2) (2003).